## Harding, Appellant, *v.* Harding.

Argued September 28, 1944.  Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

440

*Nathaniel Shapiro,* for appellant.

*Vito F. Canuso,* with him *Roy Martin Boyd,* for appellee.

OPINION BY JAMES, J.:

On November 1, 1940, appellant filed a libel in divorce alleging cruel and barbarous treatment and indignities from June, 1932 to October 31, 1940. Shortly thereafter libellant and respondent became reconciled and lived together until February, 1942. The libel was subsequently amended to allege a continuous course of conduct up to February 11, 1942. At the first hearing the master was notified by counsel for the respondent that she would neither testify nor be present at the hearing. He heard the testimony of appellant and three corroborating witnesses in her absence, on the basis of which he recommended a divorce. Shortly thereafter respondent decided to contest the libel, whereupon the master withdrew his report, and proceeded to take the testimony of respondent (with new counsel) and her witnesses, and of appellant in rebuttal. In a supplemental report, the master again found cruel and barbarous treatment and indignities. When respondent failed to file exceptions to the supplemental report, appellant moved to make the decree absolute.

Meanwhile, new counsel appeared for respondent, who obtained leave of court to file an answer nunc pro tunc denying the allegations of the libel and pleading condonation and provocation. He also took a rule for reasonable counsel fees. The court referred the report back

to the master. Both parties argued before the master the effect of the defenses raised on the testimony previously taken, but no further testimony was offered or heard. The master submitted a second supplemental report adhering to his conclusion that a divorce should be granted. The court, however, sustained the exceptions and dismissed the libel, and allowed respondent a counsel fee of $125.

Although the uncertain attitude of the respondent in defending the divorce led to a somewhat irregular procedure, the answer nunc pro tunc in no way prejudiced appellant. The failure to answer could not bar respondent from introducing testimony to refute the charges set forth in the libel. *Bonomo v. Bonomo,* 123 Pa. Superior Ct. 451, 187 A. 222; *Geyer v. Geyer,* 124 Pa. Superior Ct. 313, 188 A. 402. In the absence of testimony supplementing the answer, it could not have embarrassed appellant other than to impress upon the master and the court below the necessity of close scrutiny of the testimony of libellant and his witnesses.

It is not to be denied that appellant has proven behavior on the part of the respondent which ordinarily would merit a decree on the grounds of indignities and cruel and barbarous treatment. Nevertheless, since many of her actions may have been provoked by harsh and brutal conduct on his part, he has failed to establish himself as the injured and innocent spouse, by clear and satisfactory evidence. *Daly v. Daly,* 137 Pa. Superior Ct. 403, 9 A. (2d) 192; *Rausch v. Rausch,* 146 Pa. Superior Ct. 342, 22 A. (2d) 221.

The course of conduct upon which the libel is predicated began in 1932 and lasted until 1942. Appellant asserts that between 1932 and 1939 he suffered physical abuse and violence, name-calling, nagging and the squanderings of an extravagant wife.

It seems that serious conjugal difficulties began in

1939, when a Mr. Turner entered the household circle as a boarder. Respondent is accused of continuously cursing and using epithets in private and in public, hurling knives, dishes and ashtrays with intent to injure, kicking, scratching and tearing the skin, attempting to emasculate her husband, threatening him with an axe, and refusing to serve him at the table. The most weighty grievance of all is respondent's excessive familiarity with Mr. Turner. In confirmation, three witnesses were produced, among them respondent's brother and sister-in-law, who related incidents of the use of indecent language, knife and dish throwing, and downright suspicious behavior with the boarder.

On the other hand, we note the testimony of the son and daughter, probably the best informed, unbiased witnesses, that the appellant was continuously the aggressor; that he had beaten his wife prior to 1939; that many of his bruises were inflicted in self-defense; that on one occasion libellant beat respondent so badly that he fractured her rib; that at times the son would be forced to aid his mother; and that, in using vulgar terms, respondent was merely reechoing the indecent language in which his accusations of infidelity were couched. See *Mathias v. Mathias,* 114 Pa. Superior Ct. 444, 174 A. 821; *Viney v. Viney,* 151 Pa. Superior Ct. 86, 29 A. (2d) 437. Where personal violence is inflicted in retaliation, the provoking party cannot profit from the foreseeable results of his provocations to prove a reasonable danger to life and limb, when a desirable change in his conduct would prevent the peril. Marriage vows are not limited to the meek, and the strong spouse who prefers to remain tied by the bonds of matrimony and fight to save her body and her rights does not thereby become an undesirable mate.

We notice furthermore that marital relations were resumed after the filing of the original libel on November

1, 1940, apparently continuing until 1942, and though a conditional reconciliation does not abate a libel if the charge is other than adultery, it is a factor to be taken into consideration in passing on the danger to life and health and the degree or severity of the alleged indignities which rendered libellant's condition intolerable. *Cunningham v. Cunningham,* 119 Pa. Superior Ct. 380, 181 A. 458; *Mathias v. Mathias,* supra; *Hepworth v. Hepworth,* 129 Pa. Superior Ct. 360, 195 A. 924. Conduct arousing suspicion or jealousy, of course, cannot establish personal violence or reasonable apprehension of it; nor, in the absence of an open and notorious exhibition of improperly placed affection, does it offer such indignities as to make life and existence unbearable. See Freedman, Marriage and Divorce in Pennsylvania, §316, 317. There is no testimony that respondent ever misbehaved in the presence of a group. "It would have been equally easy for libellant to base his suit for divorce upon the ground of adultery, were there the slightest merit in the story." *Viney v. Viney,* supra, at p. 91.

As the record stands it is possible to believe both parties that the other was very little of a saint and very much of a sinner. Under these circumstances, the following, by President Judge KELLER, is appropriate. "...... in weighing the evidence relating to the libellant's right to a divorce, the court should not enter a decree based on merely a slight preponderance of the evidence, but should refuse the divorce unless the libellant establishes by clear and satisfactory proof (1) such cruel and barbarous treatment as endangered his life, or such a course of indignities to the person as rendered his condition intolerable and life burdensome; and (2) that the libellant was the injured and innocent spouse ...... where both parties are nearly equally at fault, so that neither can clearly be said to be 'the injured and innocent spouse,' the law will grant a divorce to neither,

but will leave them where they put themselves; and if the alleged indignities were provoked by the complaining party, they are not grounds for divorce, 'unless when the retaliation is excessive' ......: and that means, established to be excessive by clear and satisfactory evidence." *Daly v. Daly,* supra, at p. 404. See *Hill v. Hill,* 57 Pa. Superior Ct. 1, 7; *Scott v. Scott,* 135 Pa. Superior Ct. 505; *Rausch v. Rausch,* supra.

An independent reading of the evidence has failed to convince us that the trial judge was incorrect.

Appellant complains that the allowance of counsel fees for the respondent is excessive. In disposing of the petition for the allowance of counsel fees, upon which testimony was taken on behalf of the libellant and the respondent, the court below had the following to say. "...... when entering the order allowing Roy M. Boyd, Esq., as attorney for the respondent, counsel fee in the sum of $125, the court took into consideration the financial status and income of each of the parties, the fact that counsel who represented the respondent in the early stages of the proceedings was allowed a counsel fee of $35, and the fact that the services rendered by Mr. Boyd were substantial and effective, and resulted in the action of the court dismissing the libel." We deem it unnecessary to detail the financial status of the parties or the services actually rendered by respondent's counsel but our examination of the record persuades us that in making this allowance no abuse of discretion has been shown.

Decree affirmed.

Per Curiam, January 25, 1945:

The foregoing opinion was prepared by Judge James prior to the expiration of his term of office. It is now adopted as the opinion of the Court.